UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JORGE CRUZ,                                            :
                                                       :
                              Plaintiff,               :   Civil Action No.:13 Civ. 8498 (KMK)
                                                       :
                     -against-                         :
                                                       :
                                                       :
AAA CARTING and RUBBISH REMOVAL, INC.                  :
and PASQUALE CARTALEMI, JR., an individual;            :
                                                       :
                              Defendants.              :
------------------------------------------------------------ x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
<u>JURISDICTION AND/OR FOR SUMMARY JUDGMENT</u>**


Nicholas Caputo, Esq.
Michael A. Eisenberg, Esq.
ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
*Attorneys for Defendants*
875 Third Avenue, 9th Floor
New York, NY  10022
(212) 603-6300

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................... 1

BACKGROUND AND SUMMARY OF ARGUMENT ......................................................... 2

STATEMENT OF FACTS ..................................................................................................... 7

ARGUMENT ......................................................................................................................... 7

    I.    Standard of Review ................................................................................................ 7

        A.    Rule 12(b)(1) and 12(h)(3) ....................................................................... 7

        B.    Rule 12(c) ................................................................................................. 8

        C.    Rule 56 ..................................................................................................... 9

    II.    Plaintiff is Exempt from FLSA's Overtime Provisions ....................................... 10

        A.    The Motor Carrier Exemption ................................................................. 10

        B.    Plaintiff's Duties Involved the Transportation of Goods
               In Interstate or Foreign Commerce ......................................................... 12

            i)    Plaintiff Transported Goods Across State Lines ................................. 12

            ii)    Plaintiff Could Have Been Called on to Perform
                   Interstate Travel ................................................................................. 12

            iii)    The Waste Transported Was Shipped
                   Out-of-State .......................................................................................... 13

    III.    The United States Department of Labor Found That the Motor Carrier
           Exemption Applied to AAA Carting's Employees .......................................... 17

    IV.    Plaintiff's Minimum Wage Claim Must Be Dismissed ..................................... 18

    V.    Plaintiff's State Law Claims Must Be Dismissed ............................................. 19

CONCLUSION ..................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................................................9

*Atlantic Coast Line R.R. v. Standard Oil Co.,*
275 U.S. 257 (1927)..............................................................................................15

*Baltimore & O.S.W.R.R. v. Settle,*
260 U.S. 166 (1922)........................................................................................15, 16

*Bilyou v. Dutchess Beer Distribs., Inc.,*
300 F.3d 217 (2d Cir. 2002)..........................................................................14, 15, 16

*Boutell v. Walling,*
327 U.S. 463 (1946)..............................................................................................18

*Byrnie v. Town of Cromwell, Bd. of Educ.,*
243 F.3d 93 (2d Cir. 2001).....................................................................................9

*Caldarola v. Calabrese,*
298 F.3d 156 (2d Cir. 2002)...................................................................................9

*Cariani v. D.L.C. Limousine Serv.,*
363 F. Supp. 2d 637 (S.D.N.Y. 2005)..................................................................7, 8

*Craft v. Ray's, LLC,*
2009 U.S. Dist. LEXIS 90862 (S.D. Ind. September 29, 2009) ................11, 14, 15

*Falken v. Glynn County, Georgia,*
197 F.3d 1341 (11th Cir. 1999) ............................................................................17

*Fox v. Commonwealth Worldwide Chauffeured Transp. of NY,*
865 F. Supp. 2d 257 (E.D.N.Y. 2012) .........................................................9, 11, 12

*Garcia v. Fleetwood,*
511 F. Supp. 2d 1233 (M.D. Fla. 2007)................................................................11

*Great S. Fire Proof Hotel Co. v. Jones,*
177 U.S. 449 (1900)................................................................................................2

*Johnson v. Equinox Holdings, Inc.*,
 2014 U.S. Dist. LEXIS 91786 (S.D.N.Y. July 2, 2014) ........................................................18

*Kahn v. IBI Armored Serv., Inc.*,
 474 F. Supp. 2d 448 (E.D.N.Y. 2007) ................................................................................20

*La Barbera v. R. Rio Trucking*,
 2007 WL 2177063 (E.D.N.Y. July 27, 2007) .........................................................................9

*Morgan v. Francois*,
 170 Fed. Appx. 978 (8th Cir. 2006).............................................................................12, 15

*Morris v. McComb*,
 332 U.S. 422 (1947).........................................................................................................14

*Nowak v. Ironworkers Local 6 Pension Fund*,
 81 F.3d 1182 (2d Cir. 1996)................................................................................................8

*Park Ins. Co. v. Lugo*,
 2014 U.S. Dist. LEXIS 75448 (S.D.N.Y. June 2, 2014).........................................................11

*Reich v. American Driver Serv.*,
 33 F.3d 1153 (9th Cir. 1994) ............................................................................................14

*Rubin v. Buckman*,
 727 F.2d 71 (3d Cir. 1984).................................................................................................8

*Saca v. Dav-El Reservation Sys.*,
 600 F. Supp. 2d 483 (E.D.N.Y. 2009) ..................................................................................9

*Shannon Graham, et al. v. Town & Country Disposal of Western Missouri, Inc.*,
 865 F. Supp 2d 952 (W.D. Mo. Sept 20, 2011) ..............................................................10, 11

*Shipping Fin. Servs. Corp. v. Drakos*,
 140 F.3d 129 (2d Cir. 1998)...............................................................................................7

*Spiteri v. Russo*,
 2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013).....................................................19

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)............................................................................................................2

*Tate-Small v. Saks Inc.*,
 2012 U.S. Dist. LEXIS 76081 (S.D.N.Y. May 31, 2012).......................................................19

*Torres v. Gristede's Operating Corp.*,
 628 F. Supp. 2d 447 (S.D.N.Y. 2008)................................................................................19

iv

*United States v. New Silver Palace Restaurant, Inc.,*
  810 F. Supp. 440 (E.D.N.Y. 1992) ............................................................8

*Vanartsdalen v. Deffenbaugh Indus.,*
  2011 U.S. Dist. LEXIS 28279 (D. Kan. Mar. 18, 2011)...........................11

*Vidinliev v. Carey Int'l, Inc.,*
  581 F. Supp. 2d 1281 (N.D. Ga. 2008) ..................................................12

*Walling v. Jacksonville Paper Co.,*
  317 U.S. 564 (1943)...............................................................................14

**Statutes**

49 U.S.C.A. § 31101 ..................................................................................10

28 U.S.C. § 1367(a) ....................................................................................8

29 U.S.C. § 206(a) ....................................................................................18

29 U.S.C. § 213(b)(1) ..................................................................................1

49 U.S.C. § 13102 ......................................................................................10

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ........................... *passim*

Motor Carrier Act of 1935, 49 U.S.C. § 13501 *et seq.* ...................3, 10, 12, 15

New York Labor Law § 650 *et seq.* .................................................. *passim*

**Other Authorities**

29 C.F.R. § 778.109 ..................................................................................18

29 C.F.R. §§ 782.2(a)-(b)(2) ......................................................................10

12 NYCRR § 142-2.2 ................................................................................19

Fed. R. Civ. P. 12(h)(3)...........................................................................2, 7, 8

Fed. R. Civ. P. 56 .....................................................................................1, 9

Fed. R. Civ. P. 12(c) ..................................................................................8

Local Fed. R. Civ. P. 56.1..........................................................................7

## INTRODUCTION

AAA Carting and Rubbish Removal, Inc. ("AAA Carting") and Pasquale P. Cartalemi, Jr. ("Cartalemi", and collectively with AAA Carting, "Defendants"), by their attorney, Robinson Brog Leinwand Greene Genovese & Gluck P.C., respectfully submit this memorandum of law pursuant to Fed. R. Civ. P. 12(b)(1), 12(c), and 12(h)(3) in support of their motion to dismiss the complaint of Plaintiff Jorge Cruz ("Plaintiff") dated November 22, 2013 (the "Complaint") for lack of subject matter jurisdiction, and/or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 because Plaintiff is exempt from the overtime provisions of the Fair Labor Standards Act under the Motor Carrier Exemption.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint, alleging that the plaintiff was employed by AAA Carting, and that pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law § 650 *et seq.* ("NYLL"), that he is entitled to, among other things, unpaid and back wages at overtime premium pay rate (*i.e.* 1.5x the hourly rate).  Plaintiff alleges that this Court has subject matter jurisdiction pursuant to the FLSA, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the NYLL claims.

Defendants filed their Answer on April 17, 2014, denying the allegations in the Complaint and asserting various affirmative defenses.  By letter to the Court dated May 2, 2014, Defendants requested a pre-motion conference to request that the Court determine the threshold issue of whether it had subject matter jurisdiction over the action given that Plaintiff is exempt from overtime pay pursuant to the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1) (the "Motor Carrier Exemption").

Defendants raised the issue of subject matter jurisdiction at the nascent stage of the litigation because, as the Supreme Court has held, when a court lacks subject-matter jurisdiction the case must be dismissed even after trial or on appeal.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); Fed. R. Civ. P. 12(h)(3) (stating "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").  If the issue is not addressed early, the parties and this Court could spend considerable time and expense on discovery and ultimately a trial, which would all be for naught, if it were subsequently determined that this Court lacked subject-matter jurisdiction.  Given that subject-matter jurisdiction goes to the Court's authority to adjudicate the case, it should be addressed even at the "suggestion" of one of the parties, or it may be raised by the Court *sua sponte*.  *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) (stating "[t]his question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it").

The Court held a pre-motion conference on June 6, 2014, and set a briefing schedule for Defendants' motion to dismiss for lack of subject matter jurisdiction and/or for summary judgment, which was subsequently adjourned to permit the parties to attempt to reconcile in mediation.  The parties have been unable to reach a settlement, and therefore Defendants bring the instant motion.[1]

## BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiff alleges violations of the overtime and minimum wage provisions of FLSA and NYLL, and spread of hours and recordkeeping violations under NYLL.  Plaintiff's Complaint must be dismissed because (i) he is exempt from the applicable overtime provisions pursuant to

---

[1]  Defendants' motion focuses solely on dispositive issues.  As such, Defendants are addressing only the facts relevant to the dispositive issues.  Defendants in no way concede any of the allegations made in the Complaint, nor do Defendants waive any defenses to the Complaint raised in their Answer.

the Motor Carrier Exemption, (ii) his average hourly rate of pay far exceeds the state and federal minimum wage, and (iii) the residual state law claims should be dismissed once the Court disposes of the accompanying federal claims providing supplemental jurisdiction.

**The Motor Carrier Exemption**

Defendants' motion to dismiss and/or for summary judgment is based on the Motor Carrier Exemption, which exempts employees from the overtime provisions of the FLSA.  The Motor Carrier Exemption applies to employees who are employed by a motor carrier (as defined by the Motor Carrier Act), and whose duties affect the safety of operations of a motor vehicle involved in the transportation of goods in interstate or foreign commerce.  The motor vehicle must also weigh in excess of 10,000 pounds.

It is not controversial that AAA Carting is a motor carrier under the Motor Carrier Act, or that Plaintiff, as a driver of a garbage truck, affects the safety of operations of a motor vehicle that weighs well in excess of the amount required.  The likely point of contention, although Defendants argue it is not a close call, is whether interstate or foreign commerce is sufficiently invoked.

The interstate commerce prong of the Motor Carrier Exemption may be satisfied where the employee himself crosses state lines in the course of his duties, or where it is reasonable to expect that he may be called to do.  Interstate commerce may also be established where transportation of goods occurs entirely within a state, so long as such transportation is interstate in nature.  That occurs where the intrastate movement is merely part of the goods' journey in interstate or foreign commerce.  The intent of the motor carrier plays a significant role in determining whether such intrastate movement is interstate in character.  The facts presented

clearly demonstrate that there can be no genuine dispute that Defendants more than meet each of these requirements.

**AAA Carting**

AAA Carting is a duly-organized New York domestic corporation with its principal offices located in Westchester County, New York.  AAA Carting is a family-owned business that has been in the refuse collection business since 1994.  AAA Carting is registered with the United States Department of Transportation ("US DOT") and has been assigned a US DOT number. The US DOT regulates commercial vehicles that transport passengers or cargo in interstate commerce.  AAA Carting has a DOT number because its trucks transport waste and roll-off containers over state lines.

AAA Carting started off as just a "roll off" container company.  From 1994 to 2004, the only waste hauling AAA Carting performed was the transportation of "roll off" containers, which means that AAA Carting would drop empty containers off at customer locations and pick up the containers when full.  As its name suggests, a "roll-off" container rolls off the back of a truck and is left for the customer to fill up with construction and demolition ("C&D") debris.

A roll-off driver transports empty roll-off containers to customer locations.  After the container is full with C&D debris, a driver would pick up the container and bring it to a transfer station to be prepared for shipment of the waste out of Westchester County.  Most of the C&D debris ends up out-of-state.  A "transfer station" is so named because the waste transported to the station is sorted and then transferred to either a railcar or another truck to deliver to another location, typically out-of-state.

In 2004, AAA Carting started collecting commercial garbage, which meant that AAA Carting used rear-loaded trucks to collect garbage, as one would typically see in his or her

4

neighborhood.  In 2008, AAA Carting was awarded its first municipal contract to collect municipal solid waste ("MSW") for the Town of Putnam Valley.  Subsequently, AAA Carting obtained contracts for other municipalities and school districts in Westchester, Putnam and Rockland Counties.

AAA Carting also picked up recyclable material (such as glass, metals, paper and cardboard) from both commercial and municipal customers.  Much of the recyclables are sold by AAA Carting to a Swedish company called Cellmark.  Cellmark picks up the recyclables that AAA Carting delivers to one or more transfer stations in Westchester, and transports them by truck to a facility in New Jersey, where the recyclables are then loaded onto ocean-bound shipping containers for international destinations.

Given that AAA Carting's business started out, and operated for its first ten years, exclusively as a "roll-off" business where much of the C&D waste transported was shipped out of the state, it has always been AAA Carting's understanding and intent that the waste AAA Carting transported to transfer stations would thereafter be shipped out of the state.  Almost all of the recyclables are shipped out of New York and AAA Carting specifically contracts with a company, Cellmark, to do so.

Many employees of AAA Carting regularly travel across state lines as part of their job duties.  For example, in addition to commercial and residential waste transportation, AAA Carting does the aforementioned roll-off work, and customers' roll-off containers are regularly dropped off and picked up in Connecticut.  In addition, many of AAA Carting's other employees regularly travel into Connecticut on their garbage routes.  One of the towns that AAA Carting services, the Town of Southeast, borders Danbury, Connecticut, and AAA Carting's employees

travel into Connecticut to service the town.[2]  There is also a part of Route 684 that travels into Greenwich, Connecticut, so AAA Carting's employees regularly travel into Connecticut whenever transporting cargo on that highway.

As is the case with all companies, sometimes AAA Carting's employees, whose duties include interstate travel, would sometimes be absent from work due to vacation, sick leave or for personal reasons.  During such absences, another employee is tapped to help out by taking over the absent employee's route.  Thus, an employee who ordinarily did not travel out of the state could at any time be required to travel out-of-state on a substituted route.

**Plaintiff Cruz**

Plaintiff was employed from approximately April 2011 to November 2012 as a driver of one of AAA Carting's garbage trucks.  Plaintiff's usual and regular route between White Plains, New York, and Rye Brook, New York, crossed into the State of Connecticut at multiple points.

Plaintiff's interstate travel during his garbage route independently renders him exempt from the overtime provisions of FLSA and NYLL pursuant to the Motor Carrier Exemption. Additionally, Plaintiff is exempt because it was likely that Plaintiff could have been called on, in any given day, to drive one of AAA Carting's other interstate garbage routes.  Further, AAA Carting's intrastate hauling of waste to transfer stations is interstate in character, as the waste is then largely shipped out-of-state.  In fact, in 2013, following a company-wide audit, the United States Department of Labor found that AAA Carting employees were exempt under the Motor Carrier Exemption because of AAA Carting's transportation of waste and other goods ended up out-of-state or overseas.  Thus, Plaintiff's Complaint as to his FLSA overtime claims must be dismissed for lack of subject matter jurisdiction.  To the extent this Court determines that the

---

[2]  Interestingly, several of the houses that were part of the Town of Southeast, New York garbage contract were actually located in Connecticut and AAA Carting has been servicing those houses for a number of years.

issue is not one of subject matter jurisdiction, then summary judgment is proper because there is no genuine issue of fact that the Motor Carrier Exemption precludes Plaintiff's recovery.

Additionally, Plaintiff's FLSA minimum wage claim fails because his average hourly wage was far in excess of the minimum wage, so no violation is possible.  Plaintiff's overtime claims under NYLL are also subject to dismissal because New York applies the same exemptions to its overtime requirements as FLSA.  The remainder of Plaintiff's state law claims should be dismissed absent supplemental jurisdiction over a pending federal question.

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in the accompanying declaration of Pasquale P. Cartalemi, Jr. dated September 23, 2014 (the "Cartalemi Decl.") and the exhibits annexed thereto, the Declaration of Nicholas Caputo, dated September 23, 2014 (the "Caputo Decl."), and the exhibits annexed thereto, and Defendants' Rule 56.1 Statement of Undisputed Material Fact, and are only repeated herein to the extent necessary.

## ARGUMENT

**I.     Standard of Review**

**A.     Rule 12(b)(1) and 12(h)(3)**

In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (*citing Norton v. Larney*, 266 U.S. 511, 515 (1925)).  Plaintiff carries the burden of establishing that subject matter jurisdiction exists over the Complaint.  *Cariani v. D.L.C. Limousine Serv.*, 363 F. Supp. 2d 637, 639 (S.D.N.Y. 2005).

FRCP 12(h)(3) provides, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  The same standard of review applies to a 12(h)(3) motion as a 12(b)(1) motion.  "The distinction between a Rule 12(h)(3) motion and a rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984).

**B.      Rule 12(c)**

Although a motion to dismiss for lack of subject matter jurisdiction is normally raised pursuant to Rule 12(b)(1), such a motion may also be raised pursuant to Rule 12(c) "after the pleadings are closed but within such time as not to delay the trial".  *See, e.g., United States v. New Silver Palace Restaurant, Inc.,* 810 F. Supp. 440, 441 (E.D.N.Y. 1992) ("A motion to dismiss for lack of subject matter jurisdiction can certainly be raised via a Rule 12(c) motion."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (1990) ("If a party raises an issue of subject matter jurisdiction on his motion for a judgment on the pleadings, the court will treat the motion as if it had been brought under Rule 12(b)(1).").

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case.  *Nowak v. Ironworkers Local 6 Pension Fund*,81 F.3d 1182, 1187 (2d Cir. 1996).  A dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims under 28 U.S.C. § 1367(a).  *Id.* at 1188.

Courts in this district have held that the Motor Carrier Exemption deprives the Court of subject matter jurisdiction.  *See Cariani v. D.L.C. Limousine Serv.*, 363 F. Supp. 2d 637 (S.D.N.Y. 2005) (dismissing complaint alleging violations of FLSA for lack of subject matter

jurisdiction because the motor carrier exemption applied); *but see Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483 (E.D.N.Y. 2009) (holding the Motor Carrier Exemption goes to the merits of a complaint, not the jurisdiction).

### C.   Rule 56

Summary judgment is appropriately granted when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *La Barbera v. R. Rio Trucking*, 2007 WL 2177063 (E.D.N.Y. July 27, 2007).  A fact is material if it could affect the resolution of a claim or defense under controlling law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a fact is genuine if there is evidence that would allow a reasonable jury to resolve the dispute in favor of the nonmoving party.  *Id.*  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  Thus, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation" in seeking to avoid summary judgment. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

Where the Motor Carrier Exemption defeats an employee's wage claims under the FLSA, a  summary judgment dismissal is warranted. *See Fox v. Commonwealth Worldwide*

*Chauffeured Transp. of NY*, 865 F. Supp. 2d 257 (E.D.N.Y. 2012) (granting summary judgment for defendant where motor carrier exemption applied to plaintiffs' claims).

## II.   Plaintiff is Exempt from FLSA's Overtime Requirements

### A.   The Motor Carrier Exemption

Pursuant to 29 C.F.R. §§ 782.2(a)-(b)(2), the Motor Carrier Exemption applies to employees who fall within the authority of the Secretary of Transportation to establish maximum hours pursuant to Section 204 of the Motor Carrier Act of 1935, 49 U.S.C. § 13501 *et seq*. ("MCA").  This includes employees (i) who are employed by a "motor carrier" or a "motor private carrier" as defined in 49 U.S.C. § 13102[3], (ii) who are drivers, helpers, loaders or mechanics whose duties affect the safety of operation of motor vehicles, and (iii) who are involved in the transportation of goods in interstate or foreign commerce.  Additionally, a "small vehicle exception" exists, whereby employees driving trucks weighing less than 10,000 pounds are not exempt from FLSA's overtime requirements.  *See* 49 U.S.C.A. § 31101.

Motor Private Carrier is defined as a person transporting property by motor vehicle when the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.  49 U.S.C. §13102.  There can be no genuine dispute that AAA Carting is a "motor private carrier."  *See, e.g., Shannon Graham, et al. v. Town & Country Disposal of Western Missouri, Inc.*, 865 F. Supp 2d. 952, 961 n.4 (W.D. Mo. Sept 20, 2011) ("Because [defendant] collects and transports trash for a fee, [it] is clearly a motor carrier").  To be sure, federal courts in circuits around the country have regularly held that trash removal companies are motor private carriers, in finding that their employees are exempt from FLSA's overtime requirements

---

[3]  Per 49 U.S.C. § 13102, "motor carrier" means a person providing motor vehicle transportation for compensation. "Motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when—
(A) the transportation is as provided in section 13501 of this title;
(B) the person is the owner, lessee, or bailee of the property being transported; and
(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

pursuant to the Motor Carrier Exemption.  *See, e.g., Vanartsdalen v. Deffenbaugh Indus*., 2011 U.S. Dist. LEXIS 28279 (D. Kan. Mar. 18, 2011); *see also Craft v. Ray's, LLC*, 2009 U.S. Dist. LEXIS 90862 (S.D. Ind. September 29, 2009); *Graham v. Town & Country Disposal of W. Mo., Inc.*,865 F. Supp. 2d 952 (W.D. Mo. 2011).  *See also Park Ins. Co. v. Lugo*, 2014 U.S. Dist. LEXIS 75448 (S.D.N.Y. June 2, 2014) (finding municipal waste hauling company is motor carrier).

Further, there is no dispute that Plaintiff was a driver of a garbage truck as Plaintiff alleged in his Complaint that he is a driver.  *See* Complaint ¶16.  These garbage trucks are huge and weigh approximately 31,000 pounds empty and up to 54,000 pounds under full load, depending on capacity.  Anyone who has observed a garbage truck driving down the road with a helper riding on the back, while jumping on and off the truck to load cans of garbage into the truck, while traffic waits, understands that a driver such as Plaintiff directly affects the safety of operations of a motor vehicle.  It cannot credibly be disputed that a garbage truck driver's duties directly implicate the safety of operations of a motor vehicle.  *See Fox v. Commonwealth Worldwide Chauffeured Transp. of NY,* 865 F. Supp. 2d 257, 266 (2012) (driver duties are said to directly affect the safety of vehicle operation) (citing *Levinson v. Spector Motor Service,*330 U.S. 649, 668 (1947)); *see also Garcia v. Fleetwood*, 511 F. Supp. 2d 1233, 1238 (M.D. Fla. 2007) (full time drivers of motor vehicles are employees whose work directly affects the safety of operation of motor vehicles).

Nor does the "small vehicle exception" apply here, given that, as stated above, the truck Plaintiff drove weighed well over the 10,000 pounds required.  All of AAA Carting's garbage collection trucks meet the minimum weight requirement.

11

So of all the elements in the case, the sole issue for the Court's determination regarding application of the Motor Carrier Exemption is whether Plaintiff's duties involved the transportation of goods in interstate or foreign commerce.  For the reasons set forth below, there can be no genuine dispute that the interstate commerce requirement is satisfied here.

**B.     Plaintiff's Duties Involved the Transportation of Goods in Interstate or Foreign Commerce**

i)     Plaintiff transported goods across state lines

As a driver of one of AAA Carting's garbage trucks, Plaintiff was assigned a garbage route in Rye Brook, New York.  Plaintiff's regular driving route required him to cross the state line from New York into Connecticut.  As made plain on the maps attached as Exhibit E to the Cartalemi Declaration, Plaintiff drove into Greenwich, Connecticut while completing his garbage route.  As seen on Exhibit E, both King Street and Bishop Drive, which Plaintiff's route required him to drive on, cross into Connecticut.  This fact alone is dispositive of the question of whether Plaintiff's duties involved interstate commerce.  *See Morgan v. Francois*, 170 Fed. Appx. 978, 980 (8th Cir. 2006) ("Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both [the FLSA and the Motor Carrier Act].") (*citing* 29 C.F.R. § 782.7(b)(1)).

ii)     Plaintiff could have been called on to perform interstate travel

But even if Plaintiff did not drive into Connecticut on his garbage route several times each week, which it cannot be disputed he did, the interstate commerce requirement is still met if it is merely "likely" that Plaintiff may be called on to perform interstate travel.  "As long as interstate transportation "constitutes a 'natural, integral, and inseparable part'" of a worker's activities, the interstate transportation requirement is met." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY,* 865 F. Supp. 2d 257, 267 (2012) (citations omitted).  In *Vidinliev v.*

12

*Carey Int'l, Inc.*, 581 F. Supp. 2d 1281, 1287 (N.D. Ga. 2008), the court held that the interstate transportation requirement was met with respect to certain limousine drivers based solely on evidence that drivers could have reasonably been expected to make an out-of-state trip.

Therefore, the interstate requirement is also satisfied because Plaintiff could reasonably have been expected to make an out-of-state trip because it was likely he could have been called on to drive another employee's interstate route.  In addition to Plaintiff, many of AAA Carting's other employees regularly travel interstate in the course of completing their garbage routes.  One of the towns that AAA Carting services, the Town of Southeast, borders Danbury, Connecticut, and AAA Carting's drivers and helpers travel into Connecticut to service the town.  Interestingly, several of the houses that were part of the Town of Southeast, New York garbage contract were actually located in Connecticut and AAA Carting has been servicing those houses for a number of years.  There is also a section of Route 684 that travels into Greenwich, Connecticut, so AAA Carting's employees regularly travel into Connecticut whenever transporting cargo on that stretch of highway.[4]

Thus, because AAA Carting's drivers routinely cross state lines, and Plaintiff could have been assigned to drive those routes on any given day, for example, to replace a sick or vacationing worker, or merely at the discretion of AAA Carting, then interstate transportation constitutes a "natural, integral, and inseparable" part of Plaintiff's employment activities, and the interstate commerce requirement is met.

### iii)     The waste transported by AAA Carting was shipped out-of-state

Even if Plaintiff did not cross state lines in the course of his regular garbage route, and even if he was not reasonably likely to have been called on to do so, the Motor Carrier Exemption still applies to AAA Carting's employees because AAA Carting delivers its garbage,

---

[4]   To view a map of the stretch of Route 684 where it runs through Connecticut, visit http://goo.gl/cjagUk

recycling, construction and demolition debris ("C&D") and other cargo to transfer stations, which largely ship the goods outside the state, and therefore its transportation is interstate in character.  Wholly intrastate commerce satisfies the interstate commerce requirement when such intrastate transportation is "interstate in character", meaning it is part of a continuing transportation of goods in interstate commerce.  *See Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 223 (2d Cir. 2002).  "Transportation of goods within a single state is interstate in character where it forms part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination."  *See Craft v. Ray's, LLC*, 2009 U.S. Dist. LEXIS 90862, 12-13 (S.D. Ind. Sept. 29, 2009).  Indeed, this question has already been removed from contention since Plaintiff admits in the Complaint, the allegations of which are accepted as true for the purposes of this motion, that "all of Defendants' employees are engaged in interstate commerce, as they all handle goods that have been and continue to be moved in interstate commerce." Complaint, ¶10.

Intrastate transportation of goods qualifies as interstate commerce if what is being transported is actually moving in interstate commerce; the fact that other carriers may transport it out of the State is not material.  *See Morris v. McComb*, 332 U.S. 422, 423 (1947) (holding Motor Carrier Exemption applied to driver employees of carting company despite no trucks crossing state lines).  However, the intrastate transportation must form part of a "practical continuity of movement" across State lines from the point of origin to the point of destination. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1943).  Even if the motor carrier transports goods wholly intrastate, it is nevertheless subject to the Department of Transportation's jurisdiction if such transportation is merely part of a "continuing transportation" in interstate or foreign commerce.  *See Reich v. American Driver Serv.*,33 F.3d 1153, 1155 (9th

14

Cir. 1994) (*citing Burlington Northern, Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 309-10 (9th Cir.

1983).  The determination as to whether such an activity is interstate or intrastate must be based

on the totality of the circumstances.  *See Atlantic Coast Line R.R. v. Standard Oil Co.*, 275 U.S.

257, 268-69 (1927).

      Whether goods form part of a practical continuity of movement in interstate commerce

depends largely on the "original and persisting intention of the shippers." *Baltimore &*

*O.S.W.R.R. v. Settle*, 260 U.S. 166, 173 (1922).  Intrastate transportation satisfies the interstate

commerce requirement of the MCA if the shipper has a "fixed and persisting transportation

intent beyond the terminal storage point at the time of shipment".  *Bilyou v. Dutchess Beer*

*Distribs., Inc.*, 300 F.3d 217, 224 (2d Cir. 2002) (quoting 29 C.F.R. § 782.7(b)).

      AAA Carting's operations clearly satisfy the interstate commerce requirements of the

Motor Carrier Exemption.  First, as set forth in Part II.B.ii *supra*, AAA Carting trucks actually

cross state lines in the course of performing their garbage routes and roll-off work, including the

truck Plaintiff's drove.  This is why AAA Carting has a DOT number assigned by the United

States Department of Transportation.  AAA Carting's trucks regularly cross into Connecticut, for

garbage routes in the Town of Southeast and Rye Brook, as well as on Route 684.  AAA Carting

also conducts roll-off business in Connecticut.  "Highway transportation by motor vehicle from

one State to another, in the course of which the vehicles cross the State line, clearly constitutes

interstate commerce under both [the FLSA and the Motor Carrier Act].") *Morgan v. Francois*,

170 Fed. Appx. 978, 980 (8th Cir. 2006) (*citing* 29 C.F.R. § 782.7(b)(1)).

      AAA Carting's intrastate shipping of waste is also interstate in character because it forms

part of a 'practical continuity of movement' across state lines from the point of origin to the

point of destination."  *See Craft v. Ray's, LLC*, 2009 U.S. Dist. LEXIS 90862, 12-13 (S.D. Ind.

Sept. 29, 2009).  AAA Carting hauls waste to one of fifteen transfer stations, depending on the waste collected.  (*See* Cartalemi Decl., Exhibit B.)  Municipal solid waste ("MSW") and construction and demolition debris ("C&D") are transported by AAA Carting to transfer stations in the Bronx, West Nyack, Mamaroneck, Mt. Kisco, Hilburn, and Goshen, New York, as well as to Stamford, Connecticut.  The MSW and C&D debris at these stations is subsequently shipped to landfills in Pennsylvania, Delaware, New Jersey, Connecticut and New York.

AAA Carting also picks up recyclable material (such as glass, metals, paper and cardboard) from both commercial and municipal customers.  Much of the recyclables are sold by AAA Carting to a Swedish company called Cellmark.  Recyclables (including bottles and cans), cardboard and paper are shipped out of New York.  In fact, Cellmark picks up the recyclables that AAA Carting delivers to one or more transfer stations in Westchester, and transports them by truck to a facility in New Jersey, where the recyclables are then loaded onto ocean-bound shipping containers for international destinations.

The "fixed and persistent intent" of the shippers as to the destination of the goods shipped "beyond the terminal storage point" plays a significant role in whether the movement of goods within a state form part of a practical continuity of movement in interstate commerce.  *See Baltimore & O.S.W.R.R. v. Settle*, 260 U.S. 166, 173 (1922); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 224 (2d Cir. 2002).

Given that AAA Carting's business started out, and operated for its first ten years, exclusively as a "roll-off" business where much of the C&D waste transported was shipped out of the state, it has always been part of AAA Carting's intent when shipping its waste to transfer stations that such waste would thereafter be shipped out of the state.  This is particularly pertinent in New York State, where limited landfills necessitate sending waste to other states or

overseas.  AAA Carting specifically contracts with Cellmark to collect recyclables and ship them overseas.  There can be no question the fixed and persistent intent of AAA Carting for the waste and recyclables it transports is destinations outside the state, well beyond the "the terminal storage point" of the transfer stations.  Notably, "transfer stations" are so named because the waste transported to the station is sorted and then transferred to either a railcar or another truck to deliver to another location, typically out-of-state.

Thus, when viewing AAA Carting's transportation of goods, in light of the totality of the circumstances, there can be no dispute that AAA Carting's intrastate shipping is interstate in character, and forms part of a "practical continuity of movement" across state lines from the point of origin to the point of destination.

## III.   The United States Department of Labor Found that the Motor Carrier Exemption Applied to AAA Carting's Employees

From 2011 to 2013, the United States Department of Labor ("DOL") conducted a company-wide audit of AAA Carting.  The DOL conducted an investigation, reviewed the routes of employees as well as where the garbage, recyclables, and C&D debris that AAA Carting transported ended up, and ultimately found that "Drivers and helpers routinely pick up recyclables, construction debris, etc that is sent out-of-state or overseas thus entitling the company to the Motor Carriers exemption."  The audit was concluded and the DOL closed its file.

In accordance with judicial deference typically afforded to reasonable administrative agency decisions when construing the statutes to which the agency is charged with enforcing, the Court should defer to the DOL's finding that the Motor Carrier Exemption applies to AAA Carting.  *See Falken v. Glynn County, Georgia*, 197 F.3d 1341 (11th Cir. 1999) ("As with all agency rules, the DOL's regulations implementing the FLSA are accorded *Chevron* deference.");

*see also Boutell v. Walling*, 327 U.S. 463, 470-471 (1946) ("The Administrator of the Wage and Hour Division of the Department of Labor has interpreted [the Motor Carrier Exemption] consistently…The interpretation…is entitled to great weight.").  As such, this Court should defer to the DOL and find that AAA Carting's employees are exempt from the overtime provisions of the FLSA under the Motor Carrier Exemption.

**IV.    Plaintiff's Minimum Wage Claim Must Be Dismissed**

Plaintiff alleges that he was never paid minimum wages for the hours he worked in excess of forty hours.  Complaint, ¶ 26.  He also alleges that he was paid $20 per hour from the start of his employment until June 2012, when his pay rate increased to $25.51 per hour. Complaint, ¶ 24.  Plaintiff does <u>not</u> allege that he was unpaid for any of the first forty hours he worked in any given week.  Thus, simple math mandates dismissal of Plaintiff's minimum wage claim.

The FLSA provides that every employer shall pay to each of his employees a minimum of $7.25 an hour. 29 U.S.C. § 206(a).  A claim for violation of the minimum wage only exists if the employee's "average hourly wage falls below the federal minimum wage." *Johnson v. Equinox Holdings, Inc.*, 2014 U.S. Dist. LEXIS 91786 (S.D.N.Y. July 2, 2014) (*citing Lundy v. Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013).  Pursuant to 29 C.F.R. § 778.109, a plaintiff's average hourly wage is determined "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."

Plaintiff alleges he was paid at the rate of either $20 or $25.51 per hour, so his weekly salary for a forty hour workweek would have been $800 or $1,020.40, respectively.  At the applicable minimum wage of $7.25, a forty hour workweek yields a $290 paycheck.  Even being

compensated at the lower of his two pay rates of $20 per hour, Plaintiff would have had to work *more than 110 hours* per week in order for his average rate of pay to fall below the minimum wage.[5]

Plaintiff's daily route took approximately 6-8 hours to complete. *See* Cartalemi Decl., ¶23. Thus, Plaintiffs' allegation that he was paid $20 or $25.51 per hour, while also claiming that he was not paid an average rate above the minimum wage is contradictory. "Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss. *Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013). Nor can there can be a *genuine* dispute whether Plaintiff worked over 110 hours in a week. Therefore, the Court should dismiss Plaintiff's minimum wage claim under the FLSA.

## V.   Plaintiff's State Law Claims Must Be Dismissed

New York Courts recognize that because New York's overtime exemptions are specifically defined in reference to the FLSA, that the FLSA's exemptions and the interpretations of the FLSA are controlling in New York. *See* 12 NYCRR § 142-2.2 ("an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act"); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008) ("New York's overtime provisions expressly incorporate the FLSA exemptions."); s*ee also Tate-Small v. Saks Inc.*, 2012 U.S. Dist. LEXIS 76081 (S.D.N.Y. May 31, 2012) ("Because New York's overtime provisions mirror or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the FLSA." It has also been held that "New York's overtime law

---

[5] If Plaintiff was paid at least $800 for every 40 hour workweek, as he alleges he was, then in order for his average hourly rate to fall below the minimum wage of $7.25 per hour, he would have to have worked in excess of 110 hours in a single week. ($800 / $7.25 = 110.34 hours). At his increased pay rate, he would have to have worked in excess of 140 hours a week. ($1,020.40 / $7.25 = 140.74 hours).

incorporates most of the FLSA's substantive provisions and exemptions, and a court's analysis under federal and state law will, in this and most cases, be the same." *Kahn v. IBI Armored Serv., Inc.,* 474 F. Supp. 2d 448, 450 n.1 (E.D.N.Y. 2007) (applying the same analysis of applicability of the motor carrier exemption to claims under both FLSA and NYLL).  Thus, for the same reasons set forth at length above, the motor carrier exemption also operates to extinguish Plaintiff's NYLL claims.

Additionally, to the extent that any of Plaintiff's NYLL claims were to survive, they should be dismissed because, once the FLSA claims are dismissed, there is no longer grounds for the Court to maintain supplemental jurisdiction over such state claims.

## <u>CONCLUSION</u>

By reason of the foregoing, this Court should dismiss the Complaint based on lack of subject matter jurisdiction.  In the alternative, this Court should grant Defendants' motion for summary judgment, dismiss the Complaint with prejudice, and grant Defendants their costs and expenses of this action, and for such other and further relief as this Court may deem just, proper and equitable.

Dated:      New York, New York
            September 23, 2014

                    ROBINSON BROG LEINWAND
                    GREENE GENOVESE & GLUCK P.C.

                     By:      /s/  Nicholas Caputo
                    Nicholas Caputo, Esq.
                    Michael A. Eisenberg, Esq.
                    *Attorney for Defendants AAA Carting and*
                    *Rubbish Removal, Inc. and Pasquale Cartalemi, Jr.*
                    875 Third Avenue, 9th Floor
                    New York, New York 10022
                    (212) 603-6300
                    nrc@robinsonbrog.com
                    mae@robinsonbrog.com