UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE CRUZ,

                   Plaintiff,

       -v-

AAA CARTING AND RUBBISH REMOVAL, INC.
and PASQUALE CARTALEMI, JR., an individual,

                 Defendants.

Case No. 13-CV-8498 (KMK)

OPINION & ORDER

Appearances:

Adam Arthur Biggs, Esq.
Borah, Goldstein, Altschuler, Nahins, & Goidel, P.C.
New York, NY
*Counsel for Plaintiff*

Alexander Todd Coleman, Esq.
Michael John Borrelli, Esq.
Law Offices of Borrelli & Associates
Great Neck, NY
*Counsel for Plaintiff*

Nicholas Raymond Caputo, Esq.
Michael Allan Eisenberg, Esq.
Robinson Brog Leinwand Green Genovese & Gluck P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Jorge Cruz ("Plaintiff") filed suit against AAA Carting and Rubbish Removal, Inc.

("AAA Carting") and Pasquale Cartalemi, Jr. ("Cartalemi") (collectively "Defendants"), alleging

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for failure to pay

time and half for overtime hours and for failure to pay minimum wage, as well as violations of

the New York Labor Law ("NYLL"), § 650 et seq., for the same conduct and for failure to pay

the appropriate rate for spread of hours and failure to issue accurate hours and wage statements when payroll was issued.  Defendants move to dismiss Plaintiff's federal claims under Rule 12 for lack of subject matter jurisdiction over the FLSA claims and for failure to state a claim for a minimum wage violation, and to dismiss the state law claims once the federal claims have been dismissed.  Alternatively, Defendants move for summary judgement under Rule 56 on the ground that the FLSA does not apply to Plaintiff.  For the following reasons, Defendants' Rule 12 Motion is denied in part and granted in part, and Defendants' Rule 56 Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Complaint, and are presumed to be true for the purpose of Defendants' Rule 12 Motion.  Plaintiff was employed by AAA Carting and its Chief Executive Officer, Cartalemi, from November 27, 2010 to November 27, 2012.  (*See* Compl. ¶¶ 8–9, 14–15 (Dkt. No. 1).)[1]  AAA Carting "is a corporation providing trash removal services."  (*Id.* ¶ 11.)  "During his employment with Defendants, Plaintiff's duties included driving a garbage truck locally between Rye Brook and White Plains, New York."  (*Id.* ¶ 16.) Plaintiff further asserts that his "duties did not require transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act," and that he "was not otherwise exempt from the overtime requirements of the FLSA and NYLL."  (*Id.* ¶¶ 18–19.)  Furthermore, Plaintiff alleges that the "qualifying annual volume of business for Defendants exceeds $500,000.00," and

---

[1] Defendants, in their brief, set out a different employment history.  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss for Lack of Subject Matter Jurisdiction and/or for Summ. J. ("Defs.' Mem.") 6 (Dkt. No. 32) ("Plaintiff was employed from approximately April 2011 to November 2012 as a driver of one of AAA Carting's garbage trucks.").)

that Defendants' "employees are engaged in interstate commerce, as they all handle goods that have been and continue to be moved in interstate commerce." (*Id.* ¶ 10.)

"When Plaintiff was first employed, he was paid $20.00 an hour," and in June 2012 "the rate was increased to $25.51 an hour." (*Id.* ¶ 24.)  However, Plaintiff alleges that he "was never paid for hours worked in excess of forty (40) hours." (*Id.* ¶ 25.)  Plaintiff alleges, by way of example, that he worked a 60-hour work week from June 3 to 9, 2012, in that he worked "on Monday, June 4, 2012, from 5:30 a.m. to 4:45 p.m.; Tuesday, June 5, 2012, from 5:30 a.m. to 6:00 p.m.; Wednesday, June 6, 2012, from 5:30 a.m. to 5:15 p.m.; Thursday, June 7, 2012, from 5:30 a.m. to 3:45 p.m.; Friday, June 8, 2012, from 5:30 a.m. to 3:45 p.m.; and Saturday, June 9, 2012, from 1:30 a.m. to 9:30 a.m.," but was only paid for 40 hours that week. (*Id.* ¶ 23.) Plaintiff further alleges that he "frequently worked in excess of ten (10) hours in a single work day," but was "never paid for spread-of-hours throughout his employment," and that he "was provided with statements of hours or wages which inaccurately reflected the number of hours worked." (*Id.* ¶¶ 28–29.)

Defendants have submitted materials outside of the pleadings in support of their Motion for Summary Judgment, most of which evidence Plaintiff either disputes or asserts, by his counsel's Rule 56(d) declaration, that he needs discovery in order to dispute.  The evidence submitted outside of the pleadings addresses the following points:  First, according to Defendants, Plaintiff's route "required that he drive the truck several times a week over the state line into Connecticut." (Decl. of Pasquale P. Cartalemi, Jr. in Supp. of Mot. To Dismiss for Lack of Subject Matter Jurisdiction and/or for Summ. J. ("Cartalemi Decl.") ¶ 22 (Dkt. No. 31); *see also id.* Ex. E (Google Maps screenshots showing Plaintiff's alleged routes).)  Plaintiff disputes these assertions, though he acknowledges that he "did drive on King Street, which crosses into

Connecticut for forty-five seconds to reach a portion of his route . . . once per month," but maintains that he "did not collect any waste in Connecticut."  (Decl. of Jorge Cruz in Opp'n to Defs.' Mot To Dismiss, for Judgment on the Pleadings, and/or for Summ. J. ("Cruz Decl.") ¶ 19 (Dkt. No. 35).)  Second, according to Defendants, "[e]mployees whose duties includ[ed] traveling across state lines would sometimes be absent from work due to vacation, sick leave or for personal reasons," and "[d]uring such absences, it would be necessary for an employee from another route to help out by taking over the absent employee's route during his absence." (Cartalemi Decl. ¶ 14.)  Plaintiff disputes this, alleging that "to the best of [his] knowledge, Defendants never made a driver abandon his route to cover the route of another driver that was absent," that "[d]uring [his] employment, [he] only drove [his] assigned route," and that "[a]t no time did Defendants ever require [him] to cover the route of another driver in the household waste division."  (Cruz Decl. ¶¶ 20–22.)  Also, in response generally to Defendants' use of materials outside the pleadings, Plaintiff's counsel asserts that he requires discovery "to demonstrate that Plaintiff's personal contact with interstate commerce was de minim[i]s."  (Decl. of Adam A. Biggs, Esq. in Supp. of Discovery pursuant to Fed. R. Civ. P. 56(d) ("Biggs Decl.") ¶ 19 (Dkt. No. 37) (italics omitted).)  Discovery is also needed, according to Plaintiff, to show that any interstate travel did not constitute a natural, integral, and inseparable part of his duties. In particular, Plaintiff says he needs discovery to ascertain "how many routes required a driver to have more than de minimis contact with interstate travel; how many drivers, within the entire class of household waste drivers, were required to drive interstate routes; how many intrastate drivers have ever been called on to drive[] interstate; how many household waste drivers were ever called upon to cover interstate routes for other divisions; whether interstate routes were indiscriminately spread amongst all drivers; how . . . interstate routes [were] assigned; and

4

whether a driver could avoid being called on to drive an interstate route." (*Id.* ¶ 25 (italics omitted).)

Third, Defendants assert that the recycling and garbage often has ended up out of state. In particular, Defendants claim that construction and demolition ("C&D") debris was typically exported out of state, (Cartalemi Decl. ¶ 7), that the recyclables are shipped out of New York both to other states and internationally, (*id.* ¶ 10), that "[t]here are limited landfills in New York so the garbage is shipped out of the state," (*id.* ¶ 11), and that "it has always been [Cartalemi's] understanding and intent that the waste AAA Carting transported to transfer stations would thereafter be shipped out of the state" "[g]iven that AAA Carting's business started out, and operated for its first ten years, exclusively as a 'roll-off' business where much of the C&D waste transported was shipped out of the state," (*id.*).[2]  In response, Plaintiff asserts that "Defendants' business had multiple divisions, including construction debris, recycling, and household waste," and that he only collected and transported household waste. (Cruz Decl. ¶¶ 4–9.)  Additionally, Plaintiff asserts that he "only deposited waste at the transfer station located in White Plains, New York," except that "[o]n one sole occasion [he] deposited waste at a transfer station located at 325 Yonkers Ave. Yonkers, New York." (*Id.* ¶ 17.)  On the list of transfer stations submitted by Defendants, there is not a White Plains location listed, and with regard to the station located at 325 Yonkers Ave., Yonkers, NY, the document states that the destination of waste is "[u]nknown." (Cartalemi Decl. Ex. B (List of Transfer Stations), at unnumbered 2.) Furthermore, Plaintiff's counsel contends that he requires discovery "to demonstrate that the recycling and construction debris divisions are distinct from the household division" and thus

_____

[2] Exhibit B to Cartalemi's Declaration contains a list of transfer stations that indicate where the waste is transferred. (Cartalemi Decl. Ex. B (List of Transfer Stations).)

evidence related to the other divisions "is irrelevant in regards to household waste." (Biggs Decl. ¶¶ 12–15.) Additionally, Plaintiff "seeks evidence to demonstrate that when Defendants collected the waste they did not have any specific out-of-state recipient in mind beyond the transfer station." (*Id.* ¶ 30.) In particular, Plaintiff seeks to examine Defendants' contracts with municipalities and transfer stations to find "facts that will illustrate that the ultimate locations of the household waste, beyond the transfer station, were immaterial to Defendants." (*Id.*)

Finally, Defendants assert that the Department of Labor ("DOL") conducted a company-wide audit of AAA Carting and "issued a Compliance Action Report finding that the Motor Carrier Exemption applied to AAA Carting's employees because some of the waste or refuse transported by AAA Carting is shipped out-of-state or overseas," (Cartalemi Decl. ¶¶ 15–19), and states that "[d]rivers and helpers routinely pick up recyclables, construction debris, etc[.] that is sent out-of-state or overseas thus entitling the company to the Motor Carriers exemption 13(b)1," (*id.* Ex. C ("DOL Compliance Action Report"), at 2). Plaintiff responds that he requires discovery on whether the DOL Report only addressed the recycling and construction debris portion of the company, and also asserts that this Report is inadmissible hearsay. (Biggs Decl. ¶¶ 34–36.)

B. Procedural Background

Plaintiff filed suit on November 27, 2013, (Dkt. No. 1), and Defendants answered the Complaint on April 17, 2014, (Dkt. No. 11). On June 6, 2014, the Court held a pre-motion conference, and set a scheduling order for the submission of Defendants' motion. (Dkt. (minute entry for June 6, 2014); Dkt. No. 20.) Thereafter, Defendants filed their Motion and accompanying papers, (Dkt. Nos. 29–33), Plaintiff filed his Opposition, (Dkt. Nos. 34–37), and Defendants filed their Reply, (Dkt. Nos. 38–39). Discovery has been stayed pending resolution

of the question of whether the Court has subject matter jurisdiction over this case.  (*See* Pl. Jorge Cruz's Mem. of Law in Opp'n to Defs.' Mot To Dismiss, for Judgment on the Pleadings and/or for Summ. J. ("Pl.'s Mem.") 9 (Dkt. No. 36); Biggs Decl. ¶ 3.)

## II.  Discussion

### A.  Rule 12 Motion

Defendants move for judgment on the pleadings (1) pursuant to Rule 12(c) and Rule 12(h)(3), claiming that the Court lacks subject matter jurisdiction, and (2) pursuant to Rule 12(c), claiming that Plaintiff has not adequately pleaded a minimum wage violation.[3]

#### 1.  Subject Matter Jurisdiction

First, Defendants move for judgment on the pleadings under Rule 12(c) and Rule 12(h)(3), arguing that Plaintiff falls into the FLSA's motor carrier exemption and therefore that the Court does not have subject matter jurisdiction over his claims.

##### a.  Standard of Review

"Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion."  *Xu v. City of New York*, No. 08-CV-11339, 2010 WL 3060815, at *2 n. 2 (S.D.N.Y. Aug. 3, 2010); *see also*

---

[3] Defendants move under Rule 12(b)(1), in addition to Rules 12(c) and 12(h)(3).  The 12(b)(1) Motion To Dismiss for lack of subject-matter jurisdiction is untimely because such a motion must be made "before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  The proper bases for this Motion are Rule 12(c) and Rule 12(h)(3).  *See Goodwin v. Solil Mgmt. LLC*, No. 10-CV-5546, 2012 WL 1883473, at *1 (S.D.N.Y. May 22, 2012) (converting a motion to dismiss under Rules 12(b)(1) and 12(b)(6) to a motion for judgment on the pleadings under Rule 12(c) because the moving defendants answered the complaint); *Houston v. Goord*, No. 03-CV-1412, 2006 WL 2827163, at *3 (N.D.N.Y. Sept. 29, 2006) (construing a motion under Rules 12(b)(1) and 12(b)(6) as a motion under 12(c) when the moving defendants "submitted an answer which included within it, as defenses, the grounds now raised in their motion").

*S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 220 (S.D.N.Y. 2009) ("The standards to be applied to a motion for judgment on the pleadings pursuant to Rule 12(c) are the same as those applied to a motion to dismiss pursuant to Rule 12(b)."). On a motion to dismiss pursuant to Rule 12(b)(1), a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). Additionally, the difference between a motion made under Rule 12(b)(1) and one made under Rule 12(h)(3) "is largely academic, and the same standards are applicable to both types of motions." *Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12 motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,'" *Morrison*, 547 F.3d at 170 (quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted)), but "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" *id.* (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). In deciding the motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

b.  Analysis

Addressing first the issue of subject matter jurisdiction, 28 U.S.C. § 1331 provides that "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiff asserts that, because he brings claims under the FLSA, the Court has federal question jurisdiction over his federal claims and has supplemental jurisdiction over his state law claims.  (*See* Pl.'s Mem. 5.)  Defendants, conversely, argue that the motor carrier exemption to the FLSA exempts Defendants from having to follow the FLSA with respect to Plaintiff, thus depriving the Court of subject matter jurisdiction.  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss for Lack of Subject Matter Jurisdiction and/or for Summ. J. ("Defs.' Mem.") 8–18, 20 (Dkt. No. 32).)

The Supreme Court has held that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue," "[b]ut when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (footnote omitted).  The jurisdictional grant of the FLSA provides: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  This provision clearly does not indicate that Congress intended for the statutory limitation at issue here—the motor carrier exemption—to be jurisdictional.  *See Jackson v. Maui Sands Resort, Inc.*, No. 08-CV-2972, 2009 WL 7732251, at *2 (N.D. Ohio Sept. 8, 2009) ("[T]he [c]ourt is unable to ascertain . . .  how this language [in the statutory grant of

jurisdiction] might be construed to show that Congress clearly intended to deprive the courts of jurisdiction where a defendant employer qualifies for an exemption under the FLSA.").

In support of their argument that the motor carrier exemption is jurisdictional, Defendants cite one, pre-*Arbaugh*, case, *Cariani v. D.L.C. Limousine Service, Inc.*, 363 F. Supp. 2d 637 (S.D.N.Y. 2005). In that case, the court ruled that because either the motor carrier exemption to the FLSA or the taxicab exemption to the FLSA applied, the "court lack[ed] subject matter jurisdiction over the plaintiff's federal claim." *Id.* at 649. However, the court in that case decided the issue on a Rule 12(b)(1) motion "without addressing the jurisdiction-merits distinction and after allowing further discovery on the exemption issues." *Casares v. Henry Limousine Ltd.*, No. 09-CV-458, 2009 WL 3398209, at *1 (S.D.N.Y. Oct. 21, 2009) (discussing *Cariani*); *see also Saca v. Dav-El Reservation Sys., Inc.*, 600 F. Supp. 2d 483, 485 (E.D.N.Y. 2009) ("The district court in *Cariani* . . . assumed without any explicit analysis that the FLSA exemption issue went to the court's jurisdiction over the controversy rather than the merits thereof."). Moreover, as Plaintiff notes, this reasoning has not been followed by other courts in the Second Circuit, which have held that whether an employer fits into an FLSA exemption goes to the merits of the claim, not to the Court's jurisdiction. *See Benitez v. F & V Car Wash, Inc.*, No. 11-CV-1857, 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012) ("[A]fter review of recent case law in [the Second] Circuit, the court concurs with [the] [p]laintiffs and concludes that the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability."); *Casares*, 2009 WL 3398209, at *1 (noting that there is "substantial authority that a Rule 12(b)(1) motion for lack of subject matter jurisdiction is not the appropriate procedural device for defendants to assert exemptions to the FLSA" and collecting cases); *Fox v. Commonwealth Worldwide*

10

*Chauffeured Transp. of N.Y., LLC*, No. 08-CV-1686, 2009 WL 1813230, at *2 (E.D.N.Y. June 25, 2009) (holding that the question of whether the defendant is subject to the FLSA exemptions is a merits question only, and reasoning that this conclusion is "supported by . . . Second Circuit case law and consistent with numerous other district courts in this circuit"); *Saca*, 600 F. Supp. 2d at 485 (disagreeing with *Cariani* and noting that "numerous other courts have considered the issue and concluded that a defendant claiming to be exempt from the FLSA is challenging the merits of the FLSA claim rather than the court's jurisdiction over the subject matter"); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002) ("To prevail on a claim under the FLSA, a plaintiff must, of course, demonstrate that the defendant is covered by the Act, such as by showing that the defendant constitutes an enterprise engaged in commerce.  However, this required showing is simply an element of the cause of action.  A plaintiff's failure to make this showing constitutes a failure on the merits." (citation omitted)).

Moreover, while "[i]t is true that courts sometimes refer to the plaintiff's obligation to prove a defendant's covered status as 'jurisdictional,'" the term is "overused" and "one that is often used without explicit consideration of whether the court's authority to adjudicate the type of controversy involved in the action" is really at stake." *Velez*, 203 F. Supp. 2d at 330 (some internal quotation marks omitted).  Indeed, as recognized by the Second Circuit in *Da Silva v. Kinsho International Corporation*, 229 F.3d 358 (2d Cir. 2000), "[w]hether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question," and "[c]ourt decisions often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Id.* at 361.  Therefore, given that the vast majority of the courts in the Second Circuit

have held that the issue of whether an employer falls into an FLSA exemption is a merits

question and not a jurisdictional threshold, and in light of the Supreme Court's ruling that a

limitation on a statute's scope should be considered jurisdictional only when the statute "clearly

states" that it should be so considered, *Arbaugh*, 546 U.S. 515, the Court denies Defendants'

Motion to dismiss for lack of subject matter jurisdiction.

### 2.  Minimum Wage Violation

Next, Defendants move for judgment on the pleadings under Rule 12(c) with respect to

Plaintiff's claim that he was not paid minimum wage under the FLSA for hours he worked in

excess of 40 hours a week.

### a.  Standard of Review

"The standard of review on a motion for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c) is the same standard of review applied to a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Marte v. Safety Bldg. Cleaning Corp.*,

No. 08-CV-1233, 2009 WL 2827976, at *1 (S.D.N.Y. Sept. 2, 2009).  With respect to Rule

12(b)(6) motions, the Supreme Court has held that although a complaint "does not need detailed

factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the

'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead,

the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to

relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from

conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.  But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that

the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ.

P. 8(a)(2))).

      For the purposes of a motion for judgment on the pleadings, as with a motion to dismiss

under 12(b)(6), the Court is required to consider as true the factual allegations contained in the

Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de

novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual

allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor."

(italics and internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466

(S.D.N.Y. 2008) (same).  In deciding a motion for judgment on the pleadings, as with a motion

to dismiss, "a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank*

*of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted) (applying standard to

a Rule 12(b)(6) motion); *see also Smith v. City of New York*, No. 13-CV-2395, 2014 WL

4904557, at *3 (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court

must confine its consideration to the pleadings and their attachments, to documents . . .

incorporated in the complaint by reference, and to matters of which judicial notice may be taken" (alteration in original) (internal quotation marks omitted)).

### b.  Analysis

Plaintiff claims that because he alleges that he was paid nothing for hours worked in excess of 40 hours a week, he was not paid minimum wage under the FLSA.  (Pl.'s Mem. 3–4, 24–25.)  However, this argument fails.  While Plaintiff may state a claim for a failure to pay *overtime* for the hours worked in excess of 40 hours a week, he does not necessarily state a claim for failure to pay *minimum wage* for those hours, because "[a]n employee cannot state a claim for a minimum wage violation 'unless [his] *average* hourly wage falls below the federal minimum wage.'"  *Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313, 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (alteration in original) (emphasis added) (quoting *Lundy v. Catholic Health Sys. of Long Is. Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)).  An employee's average hourly wage is calculated "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.  "For minimum-wage recovery under the FLSA, the pertinent question is whether 'the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.'"  *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506, 2014 WL 6674583, at *9 n.10 (E.D.N.Y. Nov. 25, 2014) (quoting *Gordon v. Kaleida Health,* 847 F. Supp. 2d 479, 490 (W.D.N.Y. 2012)).

Here, Plaintiff alleges that when he was first employed, he was paid $20.00 an hour, and that his pay rate was increased to $25.51 an hour in June 2012.  (Compl. ¶ 24.)  He also alleges that one week in June 2012 he worked a 60-hour work week, and that he frequently worked in excess of 10 hours per day.  (*Id.* ¶¶ 23, 28.)  Furthermore, he alleges that he was not paid for the

14

hours he worked in excess of 40 hours a week.  (*Id.* ¶ 25.)  However, as per Plaintiff's allegations, he was paid for 40 hours a week at a rate of either $20.00 or $25.51 an hour, for a weekly salary of either $800 or $1,020.40 per week.  The most Plaintiff alleges that he worked in a week is 60 hours.  Thus, assuming Plaintiff's allegations to be true, he was paid a minimum of either $13.33 or $17.01 an hour for actual hours worked, either of which rates is above the federal and state minimum wages.  *See Mendoza v. Little Luke, Inc.*, No. 14-CV-3416, 2015 WL 998215, at *5 (E.D.N.Y. Mar. 6, 2015) (noting that federal minimum wage under the FLSA is currently $7.25 an hour and New York minimum wage under the NYLL is $8.75 an hour).[4] Plaintiff offers no support for his theory that he was not paid the minimum wage for the weeks he worked in excess of 40 hours a week because the straight hourly rate was above the minimum wage when accounting for the hours for which he was not paid.  Indeed, Plaintiff's reasoning is undercut by *Lundy*, in which the Second Circuit held that employees are not entitled to recovery for unpaid hours worked up to 40 hours a week, so long as the average hourly rate still exceeds the minimum wage.  *See Lundy*, 711 F.3d at 116 ("'[T]he agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay.  So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid . . . .' [The] [p]laintiffs here have not alleged that they were paid below minimum wage." (alterations in original) (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960))).  Here, Plaintiff may be entitled to recovery for overtime hours worked in excess of 40 hours a week, but the Court finds that under the reasoning in *Lundy*, Plaintiff's FLSA minimum wage claim should be dismissed.

---

[4] Defendants did not move to dismiss Plaintiff's state minimum wage claim on this ground, although it appears it would be subject to dismissal for the same reasons as the federal minimum wage claim.

### B.  Rule 56 Motion

#### 1.  Standard of Review

Summary judgment shall be granted where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co*., *v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.,* No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .")).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod,* 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358, No. M21-88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "'to isolate and dispose of factually unsupported claims.'" *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)); *see also Schatzki v. Weiser Capital Mgmt., LLC*, No. 10-CV-4685, 2013 WL 6189465, at *14 (S.D.N.Y. Nov. 26, 2013) (same).

"If the party opposing a summary judgment motion shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion or allow time to take discovery." *Walden v. Sanitation Salvage Corp.*, No. 14-CV-112, 2015 WL 1433353, at *2 (S.D.N.Y. Mar. 30, 2015); *see also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").  "The affidavit or declaration must describe: (1) what facts are sought and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant's efforts were unsuccessful." *Walden*, 2015 WL 1433353, at *2.  However, "[t]here is a critical distinction between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct additional discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to commence discovery with respect to the non-movant's claims." *Desclafani v. Pave-Mark Corp.*, No. 07-CV-4639, 2008 WL 3914881, at *7 (S.D.N.Y. Aug. 22, 2008) (emphasis, alterations, and internal quotation marks omitted); *see also Walden*, 2015 WL 1433353, at *3 (same).  "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).  But if the nonmovant "give[s] the . . . court no basis to conclude that further discovery would yield" information that would create a genuine dispute as to material facts, then summary judgment may be appropriate, even before discovery has been conducted. *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).

      2.  Analysis

The FLSA applies generally to "employees engaged in interstate commerce." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008).  Among other things, the FLSA requires employers to pay overtime wages to certain employees who work more than 40 hours per week.  *See* 29 U.S.C. § 207.  However, the FLSA has also exempted classes of

employees from its wage protections.  "Because the FLSA is a remedial law, [courts] must narrowly construe its exemptions."  *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010) (footnote omitted).  Moreover, an employer bears the burden of establishing that an exemption applies.  *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) ("The employer has the burden of proving that the employee clearly falls within the terms of the exemption."); *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08-CV-2400, 2010 WL 1379778, at *15 (S.D.N.Y. Mar. 26, 2010) (same); *Franklin v. Breton Int'l, Inc.*, No. 06-CV-4877, 2006 WL 3591949, at *2 (S.D.N.Y. Dec. 11, 2006) (same).

Defendants argue that they are exempt from paying Plaintiff in accordance with the FLSA because Plaintiff fits into one of the FLSA's exemptions: the motor carrier exemption. This exemption has its roots in a desire for uniformity in regulation.  *See Dauphin*, 544 F. Supp. 2d at 271 ("The purpose of [the motor carrier] exemption is to prevent conflict between the FLSA and the Motor Carrier Act.").  So as to not subject employers to the possibility of overlapping or inconsistent statutory requirements, the FLSA provides that it does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49," which is the Motor Carrier Act (the "MCA").  29 U.S.C. § 213(b)(1); *see also Bilyou v. Dutchess Beer Distrib., Inc.*, 300 F.3d 217, 222–23 (2d Cir. 2002) (same).  "Section 31502 grants the Secretary [of Transportation] the authority to prescribe qualifications and maximum hours of service of employees of a motor carrier [or motor private carrier].  This grant of authority applies to transportation by motor carrier [or motor private carrier] of property in interstate or foreign commerce on a public highway."  *Walden*, 2015 WL 1433353, at *3 (citing 49 U.S.C. §§ 13501, 13502).  Thus, there are two requirements that must be met for an employee

19

to fall under the motor carrier exemption: (1) "the employer must be within the jurisdiction of the Secretary by virtue of operating as a motor carrier [or a motor private carrier], as defined by the statute," and (2) "the individual employee must fall within an exempt classification," which means that the employee (a) "must engage in activities of a character directly affecting the safety" (b) of "operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." *Id.* (internal quotation marks omitted). The Court will address each of these requirements in turn.

First, Defendant AAA Carting must be operating as a motor carrier or as a motor private carrier as defined by the MCA for the motor carrier exemption to apply. Under the MCA, a motor carrier is defined as a person "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).[5] A motor private carrier "means a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." *Id.* § 13102(15). Additionally, during the period of Plaintiff's employment, from 2010 to 2012, the MCA has applied only to vehicles over 10,000 pounds. *See Carter v. Tuttnaeur U.S.A. Co.*, — F. Supp. 3d —, 2015 WL 148468, at *4 (E.D.N.Y. Jan. 12, 2015) (explaining the amendments that have been made to the statutory text, and noting that 2005 and 2008 amendments provided that the MCA exemption "does not apply to motor vehicles

---

[5] Person is defined in the statute in reference to 1 U.S.C. § 1, which provides that the word person includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1; *see also* 49 U.S.C. § 13102(18) ("The term 'person', in addition to its meaning under section 1 of title 1, includes a trustee, receiver, assignee, or personal representative of a person.").

that weigh 10,000 pounds or less").  Defendants contend, and Plaintiff does not dispute, that

AAA Carting is a motor private carrier.  (*See* Defs.' Mem. 10; *see generally* Pl.'s Mem.)[6]

Moreover, the evidence set forth by Defendants is that "AAA Carting's garbage trucks all weigh

well in excess of 10,000 pounds, including the one driven by Plaintiff."  (Cartalemi Decl. ¶ 8; *see*

*also id.* Ex. A (AAA Carting Vehicle Schedule) (providing the gross vehicle weights of

Defendants' trucks).)  Plaintiff does not dispute this fact, nor does Plaintiff's counsel indicate in

his declaration that he believes that discovery will create a genuine factual dispute about the

weight of the trucks.

Second, the employee must engage in activities directly affecting safety.  Here, there is

no dispute that Plaintiff was employed as a driver.  (*See* Cruz Decl. ¶ 3 ("I drove a garbage truck

that collected household waste."); *id.* ¶ 5 ("I only collected and drove household waste");

Cartalemi Decl. ¶ 21 ("Plaintiff was employed by AAA Carting as a garbage truck driver . . . .");

Compl. ¶ 16 ("Plaintiff's duties included driving a garbage truck . . . .").)  Nothing in Plaintiff's

counsel's declaration suggests that discovery would yield information that Plaintiff was involved

---

[6] Although Defendants assert that "[t]here can be no genuine dispute that AAA Carting is a motor private carrier," (Mem. of Law in Supp. of Defs.' Mot. To Dismiss for Lack of Subject Matter Jurisdiction and/or for Summary Judgment ("Defs.'s Mem.") 10 (Dkt. No. 32) (internal quotation marks omitted)), the issue is not so clear cut.  In particular, there is some dispute about whether garbage is property under the MCA, *see, e.g., Charlton v. Republic Servs. of Fla., L.P.*, No. 09-CV-22506, 2010 WL 2232677, at *4–5 (S.D. Fla. June 2, 2010) ("[T]rash and garbage, which have no value, are not property within the meaning of the Motor Carrier Act."); *Alice v. GCS, Inc.*, No. 05-CV-50132, 2006 WL 2644958, at *3 (N.D. Ill. Sept. 14, 2006) ("Therefore, the non-hazardous, non-recyclable waste that [is transported] . . . likely does not qualify as property under the [MCA]."), and based on the limited facts before the Court, it is unclear whether Defendants can be considered owners, lessee, or bailees of the material being transported.  Moreover, the definition of motor private carrier requires that the carrier *not* be a motor carrier.  It is also not clear to the Court that AAA Carting is not a motor carrier, which would preclude it from being a motor private carrier.  In any event, the Court need not drill further on this issue, because it denies Defendants' Motion for Summary Judgment on another ground.

in anything other than driving.  And it is well established that driving is an activity that directly affects safety.  *See Morris v. McComb*, 332 U.S. 422, 430 (1947) ("The drivers are full-time drivers of motor vehicles well within the definition of that class of work by the Commission if the work is done in interstate commerce."); *Walden*, 2015 WL 1433353, at *3, *6 ("The four broad categories of workers whose duties are said to directly affect the safety of vehicle operation are: (1) drivers, (2) mechanics, (3) loaders, and (4) helpers of the first three, . . . [and] [t]he case law regarding the motor carrier exemption's application to drivers is well-established."); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 390 (E.D.N.Y. 2010) ("The Department of Labor interprets the motor carrier exemption to apply to drivers, driver's helpers, loaders, or mechanics whose work directly affects the safety of operation of vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA." (citing 29 C.F.R. § 782.2(b)(2)(i)(ii))); *Dauphin*, 544 F. Supp. 2d at 274 ("The activities of drivers affect safety of operations of motor vehicles . . . .").

The final requirement—and the only one that Plaintiff contests—is the interstate commerce requirement, which requires that Plaintiff must affect the safety of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce.  There are two general methods of establishing sufficient involvement in interstate commerce.  First, the exemption will apply if interstate travel is a "natural, integral, and inseparable part of the employee['s] duties."  *See Williams v. Tri-State Biodiesel, LLC*, No. 13-CV-5041, 2015 WL 305362, at *7 (S.D.N.Y. Jan. 23, 2015) (alterations and internal quotation marks omitted).  Second, even if an employee transports the goods wholly intrastate, the exemption may apply if the goods "are involved in a practical continuity of movement in the flow of interstate commerce."  *Bilyou*, 300 F.3d at 223 (internal quotation marks omitted).  The

Court will address whether the undisputed evidence is sufficient to bring Plaintiff within either of these categories such that summary judgment is appropriate, even without discovery.

First, it is undisputed that Plaintiff, at the very least, drove out of state for forty-five seconds once a month as part of his duties.  (*See* Cruz Decl. ¶ 19 (admitting that he "did drive on King Street, which crosses into Connecticut for forty-five seconds to reach a portion of his route . . . once per month," but stating that he "did not collect any waste in Connecticut"); *see also* Cartalemi Decl. ¶ 22; *id.* Ex. E (Google Maps screenshots showing Plaintiff's alleged routes).)[7]  Defendants argue that even this minimal interstate activity is sufficient to bring Plaintiff within the motor carrier exemption, while Plaintiff argues that such de minimis interstate activities are insufficient.  Indeed, courts have applied "[t]he de minimis rule," and thus have held that the motor carrier exemption did not apply, "where the employee's connection with anything affecting interstate motor carrier operations was so indirect and casual as to be trivial." *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 210 (1st Cir. 1972) (italics omitted) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947)).  However, "[i]n determining whether an employee's activities . . . are de minimis, it is important to focus on 'the character of the activities rather than the proportion of either the employee's time or of his activities.'" *Masson v. Ecolab, Inc.*, No. 04-CV-4488, 2005 WL 2000133, at *7 (S.D.N.Y. Aug. 17, 2005) (quoting *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674–75 (1947)).  Because courts focus on the character of the activities, instead of the proportion of time involved in interstate activity,

---

[7] Defendants suggest that Plaintiff actually conducted more interstate activity, (*see* Cartalemi Decl. ¶ 22 (asserting that Plaintiff's route "required that he drive the truck several times a week over the state line into Connecticut"; *see also id.* Ex. E (Google Maps screenshots showing Plaintiff's alleged routes)), but the issue at this stage is whether the undisputed facts are sufficient to warrant summary judgment.  Because this is a disputed fact, the Court will not grant summary judgment based on Defendants' version of the facts.

in determining whether an employee's interstate activities are de minimis, courts are hesitant to apply the de minimis exception to drivers who occasionally drive interstate.  *See Williams*, 2015 WL 305362, at *12 (holding that the "activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial," noting that "[o]ther cases have followed this reasoning when it comes to suits brought by drivers," and collecting cases (internal quotation marks omitted)); *see also Roberts v. Cowan Distribution Servs., LLC*, 58 F. Supp. 3d 593, 600 (E.D. Va. 2014) ("An isolated delivery in interstate commerce may be de minimis such that the employee still does not qualify as a driver; however, courts have hesitated to apply the de minimis principles in this context, because driving in interstate commerce significantly affects the safety of motor vehicle operations." (italics omitted)); *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 11 (W.D. La. 1976) ("[T]he de minimis rule should seldom, if ever, be applied to one who drives a motor vehicle carrying property of a private carrier in interstate commerce."), *aff'd*, 571 F.2d 978 (5th Cir. 1978)).  "Although the de minimis rule has limited applicability to drivers . . . no court has adopted [the] blanket proposition" that the de minimis rule does not apply to drivers.  *Masson*, 2005 WL 2000133, at *8; *see also id.* ("To extend the motor carrier exemption to any driving activity, no matter how infrequent or trivial, would be to encourage employers to send their employees on a minimal number of interstate trips simply to avoid the overtime compensation provisions of FLSA.").

Furthermore, while some courts, including courts within the Second Circuit, have suggested that "an employer's mere showing that an employee engages in more than de minimis interstate activity would be sufficient to invoke the motor carrier exemption," the "'more than de minimis test' has received only sporadic support in case law."  *Williams*, 2015 WL 305362, at *13 (italics omitted).  "And given that the origin of the de minimis exception—traceable to [the]

24

. . . recognition [in *Pyramid Motor Freight Corporation v. Ispass*, 330 U.S. 695 (1947),] that an employee's duties may so minimally touch on safety that the employee should *not* be included within the exemption," some courts do not "see a warrant for concluding that the applicability of the motor carrier exemption may turn exclusively on an evaluation of whether the plaintiff[']s] interstate activities crosses the de minimis threshold." *Id.* (some italics omitted).  Rather, the proper test may be whether the interstate activity is a natural, integral, and inseparable part of Plaintiff's duties such that he is likely to be called on to perform interstate travel.  *See Masson*, 2005 WL 2000133, at *8 ("Driving in interstate commerce alone does not trigger the motor carrier exemption.  Such driving, however frequent, must have been an expected and regular part of an employee's job duties."); *see also Romero v. Flaum Appetizing Corp.*, No. 07-CV-7222, 2011 WL 812157, at *4 (S.D.N.Y. Mar. 1, 2011) ("This determination requires a detailed, fact-specific inquiry into whether the activities of the individual plaintiffs involved interstate travel of a character that was more than de minimis or that interstate travel was a natural, integral and inseparable part of the position [the] plaintiffs held." (alterations and internal quotation marks omitted)); *Dauphin*, 544 F. Supp. 2d at 275 ("[F]or the motor carrier exemption from the FLSA to apply, defendants . . . must establish *either* that the activities of the individual plaintiffs involved interstate travel of a character that was more than de minimis *or* that interstate travel was a natural, integral and inseparable part of the position plaintiffs held." (alterations and internal quotation marks omitted) (emphases added)).

Instead of concluding either that because Plaintiff occasionally drove interstate he falls under the exemption or that because Plaintiff's interstate travel constituted a small percentage of his employment activity he does not, the Court instead is to conduct a "fact-specific analysis" to determine the "character of interstate driving . . . , including an examination of the method by

which the employer assigns the interstate activity to the pertinent class of employees, the nature

of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-

intrastate employee activity." *Masson*, 2005 WL 2000133, at *9 (internal quotation marks

omitted). The origin of this test is found in *Morris v. McComb*, 332 U.S. 422 (1947). In *Morris*,

the Supreme Court considered whether a group of employees who spent about 4% of their time

driving in interstate commerce fell within the MCA. *Id.* at 431. Reasoning that "it is the

character of the activities rather than the proportion of either the employee's time or of his

activities that determines the actual need for" regulation under the MCA, the Supreme Court

considered how the interstate trips were assigned among employees, ultimately concluding that

the brief interstate trips were "a natural, integral[,] and apparently inseparable part" of the

employees' employment. *Id.* at 431–33 (internal quotation marks omitted).

   Here, according to Defendants, "many of AAA Carting's . . . employees regularly travel

into Connecticut." (Cartalemi Decl. ¶ 13; *see also id.* ¶ 12 ("Many employees of AAA Carting

regularly travel across state lines as part of their job duties.").) Additionally, Defendants assert that

"[e]mployees whose duties includ[ed] traveling across state lines would sometimes be absent

from work due to vacation, sick leave or for personal reasons," and "[d]uring such absences, it

would be necessary for an employee from another route to help out by taking over the absent

employee's route during his absence." (*Id.* ¶ 14.) In response, Plaintiff asserts a need for

discovery regarding the number of intrastate and interstate routes driven by construction debris,

recycling, and household waste divisions, (Biggs Decl. ¶ 13), the structure of Defendants'

business in order to demonstrate that there were different classes of driver employees, (*id.* ¶ 15),

how often household waste drivers were asked to drive interstate routes, (*id.* ¶¶ 20, 25), how

many household waste drivers were ever called upon to cover interstate routes, (*id.* ¶ 25), how

interstate routes were assigned, (*id.*), whether interstate routes were indiscriminately spread

26

among all drivers, (*id.*), and how interstate routes were assigned, (*id.*).  Aside from identifying these gaps in discovery, Plaintiff has declared that, for the duration of his employment, he has had one specific route, (Cruz Decl. ¶ 20), that he has never covered a shift for a construction or recycling truck driver, (*id.* ¶ 10), and indeed that he has never covered a route for another household waste driver, (*id.* ¶ 21).[8]  Based on the declaration of Plaintiff's counsel and the claim that the only fact not in dispute at this point is that Plaintiff drove out of state for forty-five seconds a month, the Court concludes that it would be premature to hold that interstate travel was a natural, integral, and inseparable part of Plaintiff's duties and grant summary judgment, and that the discovery sought by Plaintiff could indeed create a genuine issue of material fact.

Finally, Defendants argue that the goods transported are involved in a practical continuity of movement in the flow of interstate commerce and thus, even if Plaintiff transports the goods wholly intrastate, the exemption still applies.  (*See* Defs.' Mem. 14–15.)  *See also Bilyou*, 300 F.3d at 223 (explaining this basis for the exemption).  "Whether the transportation is of an interstate nature can be determined by reference to the intended final destination of the transportation when that ultimate destination was envisaged at the time the transportation commenced."  *Id.* at 223–24 (internal quotation marks omitted).  "If the shipper's fixed and persisting transportation intent at the time of interstate shipment was to deliver an item to a

---

[8] Defendants also submitted a DOL Report prepared about AAA Carting, which found no wage and hour violations and stated, "Drivers and helpers routinely pick up recyclables, construction debris, etc[.] that is sent out-of-state or overseas thus entitling the company to the Motor Carriers exemption 13(b)1."  (DOL Compliance Action Report 2.)  Plaintiff's counsel asserts that he seeks discovery to establish that the DOL Report does not concern Defendants' household waste division.  (Biggs Decl. ¶ 35.)  In their Reply, Defendants assert that "the purported 'divisions' are a fiction invented by Plaintiff as AAA Carting does not have divisions." (Reply Mem. of Law in Supp. of Defs.' Mot. To Dismiss for Lack of Subject Matter Jurisdiction and/or for Summ. J. ("Defs.' Reply") 5 (Dkt. No. 39).)  While this dispute may have to be resolved someday, prudence dictates that the Parties first exchange discovery.

specified customer who had ordered the item, regardless of whether it was stored temporarily intrastate, the motor carrier exemption applies.  On the other hand, the exemption does not apply where items are delivered from out of state to an intrastate location, such as a warehouse, for future delivery to customers yet to be identified.  In other words, the exemption is inapplicable where the final destination of any shipment is not decided until after the goods had come to rest in the warehouse." *Masson*, 2005 WL 2000133, at *6 (alteration, citations, and internal quotation marks omitted).  Defendants assert generally that the recycling and garbage often has ended up out of state.  In particular, Defendants state that C&D debris was typically exported out of state, (Cartalemi Decl. ¶ 7), that the recyclables are shipped out of New York both to other states and internationally, (*id.* ¶ 10), that "[t]here are limited landfills in New York so the garbage is shipped out of the state," (*id.* ¶ 11), and that "it has always been [Cartalemi's] understanding and intent that the waste AAA Carting transported to transfer stations would thereafter be shipped out of the state," (*id.*).  As support for this claim, Defendants have provided a list of transfer stations that indicate where the waste is transferred.  (*Id.* Ex. B (List of Transfer Stations).)  But, according to Plaintiff, apart from one occasion when he deposited waste in Yonkers, he exclusively delivered waste in White Plains, and Defendants have not submitted any evidence regarding where White Plains refuse is shipped and have stated that it is unknown where Yonkers refuse is shipped.  (Cruz Decl. ¶ 17; Cartalemi Decl. Ex. B (List of Transfer Stations), at unnumbered 2.)  Furthermore, Plaintiff requests discovery "to demonstrate that when Defendants collected the waste they did not have any specific out-of-state recipient in mind beyond the transfer station."  (Biggs Decl. ¶ 30.)  In particular, Plaintiff seeks to examine Defendants' contracts with municipalities and transfer stations to find "facts that will illustrate that the ultimate locations of the household waste, beyond the transfer station, were immaterial to

Defendants." (*Id.*)  Because the operative question is whether AAA Carting had a fixed and

persisting intent to transport the specific waste out of state at the time the shipment was

commenced, even crediting all of the evidence set forth by Defendants, it is not evident that they

would be entitled to summary judgment on this point.  In any event, the discovery sought by

Plaintiff could create a genuine issue of material fact on whether the intended final destination of

the refuse transported by Plaintiff was out of state, at the time such transportation commenced.

Therefore, it would be inappropriate to grant summary judgment at this time.

III.  Conclusion

For the above reasons, Defendants' Motion for Judgment on the Pleadings is granted in

part and denied in part.  In particular, Defendants' Motion based on Plaintiff's FLSA minimum

wage violation claim is granted, but their Motion based on lack of subject matter jurisdiction is

denied.  Defendants' Motion for Summary Judgment is denied without prejudice to renewal at

the close of discovery.  The Clerk of the Court is respectfully directed to terminate the pending

Motion.  (*See* Dkt. No. 29.)

SO ORDERED.

Dated:   July 16, 2015
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE